**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 08-23318-CIV-SEITZ/O'SULLIVAN

CARNIVAL CORP., *et al.,*

Plaintiffs,

v.

ROLLS-ROYCE PLC, *et al.,*

Defendants.

_____/

## ORDER DENYING IN PART ROLLS-ROYCE'S MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss Plaintiffs' Amended

Complaint [DE-43] filed by the Rolls-Royce Defendants.[1] Plaintiffs' 11 count Amended

Complaint alleges the following claims against Rolls-Royce: (1) breach of implied warranty of

fitness for particular purpose; (2) breach of implied warranty of merchantability; (3) negligent

misrepresentation; (4) fraud in the inducement; (5) fraudulent misrepresentation; (6) deceptive

and unfair trade practices; (7) negligent testing, inspecting, repairing and/or servicing; (8) breach

of warranty of workmanlike performance; (9) negligent professional services; (10) false,

misleading, and deceptive advertising and sales; and (11) civil conspiracy. Rolls-Royce moves

to dismiss the fraud counts for failure to comply with Federal Rule of Civil Procedure 9(b), the

warranty and misrepresentation counts for failure to state a claim; all counts for failure to state a

claim because Plaintiffs have not adequately pled damages, and all counts as time barred by the

applicable statutes of limitations. For the following reasons, the Court denies in part and grants

in part Rolls-Royce's motion.

_____

[1]The Rolls-Royce Defendants consist of Rolls-Royce PLC, Rolls-Royce AB, Rolls-Royce North American Holdings, Inc., and Rolls-Royce Commercial Marine, Inc. and will be referred to collectively as Rolls-Royce.

**Background Facts**

The dispute between the parties arises from the purchase and installation of a propulsion system for the Queen Mary 2, a passenger cruise ship owned and operated by Plaintiffs. Defendants designed, manufactured, marketed, and sold the propulsion system chosen for use on the Queen Mary 2, known as the Mermaid pod propulsion system. Since installation of the Mermaid system, the system has experienced numerous problems and has undergone several repairs, recommended by Defendants. Despite these repeated repairs, problems with the system persist. The facts alleged in the Amended Complaint are lengthy. Thus, the Court will set out only a summary of the events upon which Plaintiffs base their claims.

Defendants joined together to design, manufacture, market, sell, and service a podded propulsion system for seagoing vessels. When Plaintiffs entered into the contract to build the Queen Mary 2 it was decided that a podded propulsion system would be used. After that, Defendants began marketing the Mermaid system to Plaintiffs in order to have Plaintiffs choose to purchase and install the Mermaid system on the Queen Mary 2. The marketing effort included several letters and brochures that touted the benefits of the Mermaid system. In reliance on the representations made by Defendants, Plaintiffs chose the Mermaid system for installation on the Queen Mary 2.

Thereafter, Plaintiffs became aware of problems with the Mermaid systems installed on other ships and problems with the manufacturing of the specific pods to be installed on the Queen Mary 2. As a result of manufacturing problems, in spring 2003, the already assembled and delivered Mermaid pods were returned to Defendants for reassembly and other work. As the assembly problems and problems with Mermaid systems on other ships came to light, Plaintiffs and Defendants held numerous meetings, exchanged numerous letters and phone calls, and

2

exchanged other communications. For example, at a meeting on May 15, 2003, Rolls-Royce representatives stated that the thrust bearing problem had been solved. *See* Amended Complaint, ¶ 53. At another meeting on July 9, 2003, Defendants made numerous representations to Plaintiffs regarding the difference between the design of the pods for the Queen Mary 2 and other ships and how these design differences would avoid the problems other ships had experienced. *See* Amended Complaint, ¶ 54. At that same meeting, Defendants also made specific representations regarding the lifetime of the bearings used in the Mermaid system for the Queen Mary 2. *See* Amended Complaint, ¶ 55. These representations have proven to be inaccurate. At another meeting on August 14, 2003, Defendants again made representations about the life of the bearings that proved to be inaccurate. *See* Amended Complaint, ¶ 56. Additionally at a couple of meetings prior to delivery of the Queen Mary 2, Defendants made representations to Plaintiffs that the propulsion pods were fit for their intended purpose and that failures of the types that had occurred on other ships using the Mermaid system would not occur on the Queen Mary 2 because of design modifications. *See* Amended Complaint, ¶ 57.

Plaintiffs accepted delivery of the Queen Mary 2 in December 2003. Prior to the Queen Mary 2's first dry-docking in November 2005, Defendants made representations to Plaintiffs and recommended replacement of the bearings. Based on these recommendations and representations, Plaintiffs replaced all of the bearings at the November 2005 dry-docking. *See* Amended Complaint, ¶ 61. Inspection of the original bearings after their removal indicated that they were not wearing as expected and indicated other problems with the Mermaid system. *See* Amended Complaint, ¶ 62. In November 2006, the Queen Mary 2 returned to dry-dock and Defendants again recommended that the bearings be replaced. Plaintiffs again replaced the bearings based on Defendants' representations and recommendations. Inspection of the replaced

bearings indicated that they still were not wearing as expected. *See* Amended Complaint, ¶ 65. At the November 2006 dry-docking problems were also discovered with the exciter frame. *See* Amended Complaint, ¶ 67. After the November 2006 dry-docking additional problems developed involving the damper bars. *See* Amended Complaint, ¶ 69. At the 2008 dry-docking, repairs were undertaken to resolve these problems but they have been unsuccessful. *See* Amended Complaint, ¶ 69. The Queen Mary 2 continues to have problems with its Mermaid system and Plaintiffs have incurred costs in making repairs to the system. These repairs have been recommended by Defendants but have proved inadequate. As a result, Plaintiffs filed this action.

**Dismissal of the Fraud Claims is Not Appropriate Except as to Particular Allegations**

Rolls-Royce moves to dismiss portions of the fraud claims, Counts IV and V of the Amended Complaint, for failure to plead with specificity as required by Federal Rule of Civil Procedure 9(b). Specifically, Rolls-Royce argues that Plaintiffs have failed to meet the pleading requirement as to the specific alleged frauds relating to the 2006 dry-dock bearing exchange and the 2007 representations leading to the 2008 dry-dock bearing exchange. In response, Plaintiffs argue that they have pled with the required specificity.

Rule 9(b) requires that a claim of fraud be pled with particularity. The Eleventh Circuit has stated:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted). Thus, under Rule 9(b) a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.*

Count IV of the Amended Complaint is a claim of fraud in the inducement and is based on the representations made by Defendants to Plaintiffs in order to induce them to choose and accept the Queen Mary 2 with the Mermaid system installed. Thus, Count IV is not based on the alleged frauds relating to the 2006 dry-dock bearing exchange and the 2007 representations leading to the 2008 dry-dock bearing exchange. Consequently, Rolls-Royce's arguments do not apply to this fraud count and the Motion to Dismiss as to this count must be denied.

Count V of the Amended Complaint is a claim of fraudulent misrepresentation. It is not entirely clear upon which alleged fraudulent representations Plaintiffs rely to support this claim. However, it is clear that the Plaintiffs have not alleged the person who made the statements that led to the 2006 dry-dock bearing exchange or when or where the statements were made. *See* Amended Complaint ¶ 64. It is also clear that Plaintiffs have not alleged the person or persons who made the representations that led to the 2008 dry-dock bearing exchange. *See* Amended Complaint ¶¶ 69-71. Thus, Plaintiffs have failed to plead these misrepresentations with the required particularity. Accordingly, Count V should be dismissed to the extent that it relies on these specific alleged misrepresentations with leave to replead.

**Dismissal of the Warranty and Misrepresentation Claims is Not Appropriate**

Rolls-Royce moves to dismiss Plaintiffs' warranty and misrepresentation claims, Counts I, II, III, V, and VIII, because Plaintiffs have failed to plead a necessary element of such claims, misrepresentation of a material fact. Rolls-Royce asserts that any alleged misrepresentations

were not of material fact and simply constituted "puffery"or "sales talk." In response, Plaintiffs point to numerous allegations in the Amended Complaint that set out alleged misrepresentations by Rolls-Royce, which Plaintiffs argue are more than mere puffery.

Statements that are "merely the seller's opinion or commendation" are not actionable. *Carter Hawley Hale Stores, Inc. v. Conley*, 372 So.2d 965, 968 (Fla. 3d DCA 1979) (quoting the official comment to section 2-313 of the UCC). Rolls-Royce asserts that the statements and representations alleged in the Amended Complaint are nothing more than their opinion. However, not all of the statements alleged are mere opinion. As Plaintiffs point out, they have alleged that Rolls-Royce made statements that amount to more than just puffery or sales talk, including that the Mermaid system was designed with 100% redundancy, that the Mermaid system could be operated without limitations, that the Mermaid system bearings would have running lifetimes of various specified hours, and that prior problems with the system had been solved. These particular statements amount to more than just sales talk; they address particular attributes and qualities of the Mermaid system  Thus, the Motion to Dismiss on the ground that Plaintiffs have failed to allege a misrepresentation of a material fact must be denied.

**Dismissal of All Claims for Failure to Plead Damages is Not Appropriate**

Rolls-Royce next moves to dismiss all of Plaintiffs' claims because Plaintiffs have not established their damages with any reasonable degree of certainty. Rolls-Royce argues that the damages alleged in the Amended Complaint are too hypothetical and speculative to support Plaintiffs' claims. Rolls-Royce asserts that damages are a necessary element of each of Plaintiffs' claims and thus they have failed to state claims upon which relief can be granted. Plaintiffs respond by pointing out that the Court must accept the allegations of the Amended Complaint as true and view them in the light most favorable to Plaintiffs.

In a motion made pursuant to Rule 12(b)(6), the Court must presume that all of the well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). Under this standard, Plaintiffs have adequately pled that they have incurred damages as a result of Rolls-Royce's actions. Plaintiffs Amended Complaint alleges that Plaintiffs have suffered and will suffer damages. Included in the damages already incurred are the costs of repair and maintenance of the Mermaid system. These damages are not speculative, as they have already been incurred by Plaintiffs. Further, allegations that Plaintiffs have suffered damages and will continue to suffer damages meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 801 F. Supp. 684, 704 (S.D. Fla. 1992) (holding that allegations that "Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' conduct" sufficiently allege damages to meet the requirements of Rule 8). Consequently, this argument fails and the Motion to Dismiss should not be granted on this ground.

**Dismissal of All Claims Based on the Statute of Limitations is Not Appropriate**

Lastly, Rolls-Royce argues that all of Plaintiffs' claims are barred by the applicable statutes of limitations. Rolls-Royce asserts that all of Plaintiffs claims are subject to a four-year statute of limitations, except for the negligent professional services claim, which is subject to a two-year statute of limitations.[2] Rolls-Royce maintains that all of Plaintiffs' claims arise from alleged misrepresentations made prior to the December 2003 delivery of the Queen Mary 2 and Plaintiffs incurred damages by spring 2003 when they were forced to return the Mermaid system

---

[2]Plaintiffs agree that these are the applicable statutes of limitations.

7

for reassembly prior to delivery of the Queen Mary 2. Thus, according to Rolls-Royce the

statute of limitations ran no later than spring 2007. In response, Plaintiffs assert that they did not

suffer any damages until they had to replace the bearings during the November 2005 dry-dock.

Thus, the Complaint, which was filed on December 1, 2008, was filed within the four-year

statute of limitations. Plaintiffs also argue that the Complaint for negligent professional services

was timely filed based on the continuing tort doctrine.

Under Florida law, the statute of limitations begins to run when the cause of action

accrues. Fla. Stat. § 95.031. A cause of action accrues when "when the last element constituting

the cause of action occurs." Fla. Stat. § 95.031(1). Thus, Plaintiffs' claims did not accrue until

Plaintiffs suffered damages. Despite Rolls-Royce's arguments, the Amended Complaint does

not allege that Plaintiffs suffered damages as a result of the spring 2003 return of the Mermaid

system, nor does it seek damages for that. The only damages Plaintiffs allege and seek are for

damages that were discovered or incurred during or after the November 2005 dry-dock. Thus,

the Complaint is timely as to all claims, except the negligent professional services claim.

Plaintiffs assert that the negligent professional services claim constitutes a continuing tort

and thus is not time barred because the statute of limitations begins to run when the tortious

conduct ceases. Furthermore, Plaintiffs argue that whether something constitutes a continuing

tort is a question of fact for the jury and thus cannot be decided on a motion to dismiss. Lastly,

Plaintiffs assert that the statute of limitations was tolled by Rolls-Royce's fraudulent

concealment of the fact that it was providing negligent professional services.

Florida does recognize the continuing tort doctrine. *See Halkey-Roberts Corp. v. Mackal*,

641 So. 2d 445, 447 (Fla. 2d DCA 1994). Moreover, Florida courts have held that whether the

doctrine applies to a particular set of circumstances is a question for the trier of fact. *Id.*,

8

*Pearson v. Ford Motor Co.*, 694 So. 2d 61, 67-68 (Fla. 1st DCA 1997). Thus, at this stage of the litigation it is not appropriate to dismiss Plaintiffs' negligent professional services claim based on the statute of limitations.[3] Consequently, the Amended Complaint should not be dismissed based on the statute of limitations.

For the reasons discussed above, it is hereby

ORDERED that Rolls-Royce's Motion to Dismiss Plaintiffs' Amended Complaint [DE-43] is DENIED in part and GRANTED in part:

1) The Motion to Dismiss is GRANTED to the extent that Count V is based on the alleged fraudulent misrepresentations relating to the 2006 dry-dock bearing exchange and the 2007 representations leading to the 2008 dry-dock bearing exchange. If Plaintiffs desire to file an amended complaint as to Count V that satisfies the requirements of Rule 9(b), they shall do so by **December 4, 2009.**

2) The Motion is DENIED in all other respects.

DONE AND ORDERED in Miami, Florida this /6 day of November, 2009

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

---

[3]Because the Court is not dismissing the negligent professional services claim based on the running of the statute of limitations, it will not address Plaintiffs' tolling argument.