UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-23318-CIV-SEITZ/O'SULLIVAN

CARNIVAL CORP., *et al.*,

        Plaintiffs,

v.

ROLLS-ROYCE PLC, *et al.*,

        Defendants.
_____/

## ORDER DENYING IN PART CONVERTEAM'S MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss Plaintiffs' Amended Complaint [DE-41] filed by the Converteam Defendants.[1] Plaintiffs' eleven count Amended Complaint alleges the following claims against Converteam: (1) breach of implied warranty of fitness for particular purpose; (2) breach of implied warranty of merchantability; (3) negligent misrepresentation; (4) fraud in the inducement; (5) fraudulent misrepresentation; (6) deceptive and unfair trade practices; (7) negligent testing, inspecting, repairing and/or servicing; (8) breach of warranty of workmanlike performance; (9) negligent professional services; (10) false, misleading, and deceptive advertising and sales; and (11) civil conspiracy. Converteam moves to dismiss on seven grounds. Converteam seeks: (1) dismissal of the breach of warranty claims based on a lack of privity; (2) dismissal of the fraud, misrepresentation, and conspiracy counts for failure to comply with Federal Rule of Civil Procedure 9(b); (3) dismissal of all claims as barred by the applicable statutes of limitations; (4) dismissal of the Florida Deceptive and Unfair Trade Practices Act claim, Count VI, because the statute does not apply to these circumstances;

---

[1]The Converteam Defendants consist of Converteam SAS and Converteam, Inc. and will be referred to jointly as "Converteam."

(5) dismissal of the false advertising claim because the statute does not apply to these circumstances; (6) dismissal of the negligence claims based on the economic loss rule; and (7) dismissal of all counts based on forum non conveniens. For the following reasons, the Court denies in part and grants in part Converteam's motion.

**Background Facts**

The dispute between the parties arises from the purchase and installation of a propulsion system for the Queen Mary 2, a passenger cruise ship owned and operated by Plaintiffs. Plaintiffs allege that the Converteam Defendants are alter-egos of one another and that the Converteam Defendants entered into a joint venture with the Rolls-Royce Defendants. Plaintiffs further allege that Defendants joined together to design, manufacture, market, sell, and service a podded propulsion system for seagoing vessels. These Defendants designed, manufactured, marketed, and sold the propulsion system chosen for use on the Queen Mary 2. This propulsion system is known as the Mermaid pod propulsion system. Since installation of the Mermaid system, the system has experienced numerous problems and has undergone several repairs, which Defendants recommended. Despite these repeated repairs, problems with the system persist. The facts alleged in the Amended Complaint are lengthy. Thus, the Court will set out only a summary of the events upon which Plaintiffs base their claims.

When Plaintiffs entered into the 2000 contract to build the Queen Mary 2 it was decided that a podded propulsion system would be used. After that, Defendants began marketing the Mermaid system to Plaintiffs in order to have Plaintiffs choose to purchase and install the Mermaid system on the Queen Mary 2. The marketing effort included several letters and brochures that touted the benefits of the Mermaid system and that led Plaintiffs to believe that

the Mermaid pod system was a fully developed product. In reliance on the representations made by Defendants, Plaintiffs chose the Mermaid system for installation on the Queen Mary 2.

Thereafter, Plaintiffs became aware of problems with the Mermaid systems installed on other ships and problems with the manufacturing of the specific pods to be installed on the Queen Mary 2. As a result of manufacturing problems, in spring 2003, the already assembled and delivered Mermaid pods were returned to Defendants for reassembly and other work. As the assembly problems and problems with Mermaid systems on other ships came to light, Plaintiffs and Defendants held numerous meetings, exchanged numerous letters and phone calls, and exchanged other communications. For example, at a meeting on May 15, 2003, specific Rolls-Royce representatives, identified in the Amended Complaint, stated that the thrust bearing problem had been solved. *See* Amended Complaint, ¶ 53. At another meeting on July 9, 2003, Defendants, through identified agents, made numerous representations to Plaintiffs regarding the difference between the design of the pods for the Queen Mary 2 and other ships and how these design differences would avoid the problems other ships had experienced. *See* Amended Complaint, ¶ 54. At that same meeting, Defendants' identified agents also made specific representations regarding the lifetime of the bearings used in the Mermaid system for the Queen Mary 2. *See* Amended Complaint, ¶ 55. These representations have proven to be inaccurate. At another meeting on August 14, 2003, specific individuals on behalf of Defendants again made representations about the life of the bearings that proved to be inaccurate. *See* Amended Complaint, ¶ 56. Additionally at a couple of meetings prior to delivery of the Queen Mary 2, specific agents of Defendants made representations to Plaintiffs that the propulsion pods were fit for their intended purpose and that failures of the types that had occurred on other ships using the

Mermaid system would not occur on the Queen Mary 2 because of design modifications. *See* Amended Complaint, ¶ 57.

Plaintiffs accepted delivery of the Queen Mary 2, with the Mermaid system installed, in December 2003. Prior to the Queen Mary 2's first dry-docking in November 2005, Defendants made representations to Plaintiffs and recommended replacement of the bearings. Based on these recommendations and representations, Plaintiffs replaced all of the bearings at the November 2005 dry-docking. *See* Amended Complaint, ¶ 61. Inspection of the original bearings after their removal indicated that they were not wearing as expected and indicated other problems with the Mermaid system. *See* Amended Complaint, ¶ 62. In November 2006, the Queen Mary 2 returned to dry-dock and Defendants again recommended that the bearings be replaced. Plaintiffs again replaced the bearings based on Defendants' representations and recommendations. Inspection of the replaced bearings indicated that they still were not wearing as expected. *See* Amended Complaint, ¶ 65. At the November 2006 dry-docking problems were also discovered with the exciter frame. *See* Amended Complaint, ¶ 67. After the November 2006 dry-docking additional problems developed involving the damper bars. *See* Amended Complaint, ¶ 69. At the 2008 dry-docking, repairs were undertaken to resolve these problems but they have been unsuccessful. *See* Amended Complaint, ¶ 69. The Queen Mary 2 continues to have problems with its Mermaid system and Plaintiffs have incurred costs in making repairs to the system. These repairs have been recommended by Defendants but have proved inadequate. As a result, Plaintiffs filed this action.

1.  **The Motion to Dismiss Should Be Granted in Part and Denied in Part as to the Breach of Warranty Claims**

Converteam moves to dismiss Plaintiffs' breach of warranty claims, Counts I, II, and VIII, for lack of privity. Converteam asserts that Florida law requires that there be privity of contract in order to recover on a breach of warranty claim. Converteam also asserts that the claims should be dismissed because they are brought pursuant to Florida's version of the Uniform Commercial Code (UCC), which does not apply to these circumstances. Plaintiffs respond that direct contacts between Defendants and Plaintiffs establish privity between the parties and that the UCC does apply to this case.

While generally privity of contract is required to sustain a breach of warranty claim, *see Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990), actual privity is not always necessary, *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of America, Inc.*, 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984). Despite the lack of a direct purchase from the manufacturer, Florida courts have found that the privity requirement was satisfied where the manufacturer's representative had direct contacts with the purchaser. *Id.* (holding the privity requirement satisfied where manufacturer made direct representations to the ultimate purchaser about equipment that was purchased from a third-party distributor); *see also New Nautical Coatings, Inc. v. Scoggin*, 731 So. 2d 145, 147 (Fla. 4th DCA 1999) (affirming a breach of warranty claim against a manufacturer when the manufacturer's representative was heavily involved in the transaction but a third-party shop provided the services to the plaintiff); *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626 (M.D. Fla. June 27, 2005) (holding that under Florida law certain circumstances satisfy the privity requirement even in the absence of a direct purchase from the manufacturer). Further, Official Comment 2 to § 2-313 of the Uniform

Commercial Code (UCC), which addresses express warranties, states "[a]lthough this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." Fla. Stat. § 672.313, Official Cmt. 2.

In the present case, the Amended Complaint alleges that, prior to the purchase of the Mermaid system, Converteam had several significant direct contacts with Plaintiff, that during those contacts Converteam made representations about the qualities and attributes of the Mermaid system, and that Plaintiffs relied on these representations in deciding to purchase the Mermaid system. Such direct contacts are sufficient to meet the privity requirement. *See Cedars of Lebanon*, 444 So. 2d at 1072 (stating that "[i]t seems fundamentally unfair, and anomolous in the extreme, to allow the manufacturer to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless"). Consequently, for purposes of a motion to dismiss, Plaintiffs have met the privity requirement.

Converteam also argues that the warranty claims should be dismissed because Florida Statutes §§ 672.314 and 672.315, part of Florida's version of the UCC, do not apply to the purchase of the Mermaid system. Converteam asserts that the UCC does not apply because the purchase of the system does not have "an appropriate relationship" to the state of Florida. Plaintiffs assert that Florida does have an appropriate relationship with the transaction because Plaintiffs are residents of Florida, substantial negotiations to purchase the Mermaid system took place in Florida, Defendants targeted and solicited Plaintiffs in Florida, the Queen Mary 2 is located in Florida for part of the year, and the economic injury that resulted occurred in Florida.

In interpreting the phrase "an appropriate relationship" courts have considered the following factors: the residence of the parties, the location of negotiations, the place of purchase of the goods, and the physical location of the goods at issue. *Premix-Marbletite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1353 (S.D. Fla. 2001).[2] Based on these factors and the allegations in the Amended Complaint, Florida has an appropriate relationship with the transaction. Plaintiffs are residents of Florida, substantial portions of the negotiations took place in Florida and Defendants specifically solicited Plaintiffs' business in Florida, many of the representations that form the basis of the alleged warranties were made in Miami or directed to Plaintiffs' employees located in Miami, and the Mermaid system is located in Florida for part of the year. Although the Mermaid system was not delivered in Florida, the economic injury occurred in Florida. Consequently, based on the allegations in the Amended Complaint an appropriate relationship exists between the transaction and Florida making the Florida UCC applicable to this transaction.

Lastly, Converteam argues that the claim for breach of warranty of workmanlike performance, Count VIII, should be dismissed because of lack of privity. Courts recognize an implied warranty of workmanlike performance in maritime contracts. *Messina v. Ocean Repair Serv. Co.*, 1994 A.M.C. 402, *11-12 (S.D.N.Y. 1993). Converteam argues that such a claim requires an underlying contract for the repair or service of a vessel, which Plaintiffs have not alleged. Plaintiffs respond that direct privity is not necessary to sustain a claim for breach of the

---

[2]The *Premix-Marbletite* court also noted that the court in *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 21 F. Supp. 2d 593 (E.D. La. 1998) seems to conflate the common law choice of law rules with the specific choice of law rule set out in the Florida UCC. Thus, Converteams' reliance on *In re Masonite* for the proposition that the place of delivery of the goods is the most important factor for consideration is unfounded.

warranty. While Plaintiffs may be correct that direct privity is not necessary, an underlying contract for the repair or service of the vessel is. *See Waterman S.S. Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 424 (1960); *Messina*, 1994 A.M.C. at *12 (listing elements of a claim for breach of warranty of workmanlike performance which include a contract for services). The Amended Complaint does not allege the existence of a contract, to which Defendants are a party, for the provision of services to the Queen Mary 2. Consequently, Plaintiffs' claim for breach of the warranty of workmanlike performance, Count VIII, should be dismissed without prejudice.

2.     **The Fraud, Misrepresentation, Advertising and Civil Conspiracy Claims Should Not Be Dismissed Pursuant to Federal Rule of Civil Procedure 9(b)**

Converteam next moves to dismiss Plaintiffs' fraud, misrepresentation, advertising and civil conspiracy claims for lack of particularity as required by Federal Rule of Civil Procedure 9(b). More specifically, Converteam asserts that Plaintiffs have failed to plead the specific statements made, the exact individual who made the statements, the exact content of the statements, and how the statements misled Plaintiffs. In response, Plaintiffs assert that they have pled with particularity and that their allegations that the parties were alter-egos of each other and acted in concert satisfy the pleading requirements.

Rule 9(b) requires that a claim of fraud be pled with particularity. The Eleventh Circuit has stated:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted). Thus, under Rule 9(b) a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.*

Plaintiffs have pled the allegations of fraud and misrepresentation with particularity. Specifically paragraphs 40, 42, 50, and 52- 57 allege the who, what, when, where, and how of the allegedly fraudulent statements made by Converteam or its agents. Consequently, Plaintiffs have satisfied the particularity requirement of Rule 9(b) and the portion of the motion that rests on these grounds must be denied.

**3.    Plaintiffs' Claims Are Not Barred By the Applicable Statutes of Limitations**

Converteam argues that all of Plaintiffs' claims are barred by the applicable statutes of limitations. Converteam asserts that all of Plaintiffs claims are subject to a four-year statute of limitations, except for the negligent professional services claim, which is subject to a two-year statute of limitations.[3] Converteam alleges that Plaintiffs were aware of problems with the Mermaid system as early as November 2002 and as late as November 2003, when Plaintiffs accepted delivery of the Mermaid system, and thus Plaintiffs' claims were filed well outside the applicable statutes of limitations. Plaintiffs assert that they timely filed all of their claims.

Under Florida law, the statute of limitations begins to run when the cause of action accrues. Fla. Stat. § 95.031. A cause of action accrues when "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). Thus, Plaintiffs' claims did not accrue until Plaintiffs suffered damages. Despite Converteam's arguments, the Amended Complaint does

---

[3] Plaintiffs agree that these are the applicable statutes of limitations.

9

not allege that Plaintiffs suffered damages as a result of the spring 2003 return of the Mermaid system, nor does it seek damages for that.[4] The only damages alleged by Plaintiffs and sought by Plaintiffs are for damages that were discovered or incurred during or after the November 2005 dry-dock. Thus, the complaint is timely as to all claims, except the negligent professional services claim.

Plaintiffs assert that the negligent professional services claim constitutes a continuing tort and thus is not time barred because the statute of limitations begins to run when the tortious conduct ceases. Furthermore, Plaintiffs argue that whether something constitutes a continuing tort is a question of fact for the jury and thus cannot be decided on a motion to dismiss. Lastly, Plaintiffs assert that the statute of limitations was tolled by Converteam's fraudulent concealment of the fact that it was providing negligent professional services.

Florida does recognize the continuing tort doctrine. *See Halkey-Roberts Corp. v. Mackal*, 641 So. 2d 445, 447 (Fla. 2d DCA 1994). Moreover, Florida courts have held that whether the doctrine applies to a particular set of circumstances is a question for the trier of fact. *Id.*, *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 67-68 (Fla. 1st DCA 1997). Thus, at this stage of the litigation it is not appropriate to dismiss Plaintiffs' negligent professional services claim based on the statute of limitations.[5] Consequently, the Amended Complaint should not be dismissed based on the statutes of limitations.

---

[4]Furthermore, it is not clear what damages Plaintiffs could have suffered prior to accepting delivery of the Queen Mary 2, and with it the Mermaid system.

[5]Because the Court is not dismissing the negligent professional services claim based on the running of the statute of limitations, it will not address Plaintiffs' tolling argument.

4.  **The Motion to Dismiss the Florida Deceptive and Unfair Trade Practices Act Claim is Granted in Part**

Converteam asserts that Plaintiffs' claim that Defendants violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) must be dismissed because FDUTPA does not apply to matters of foreign commerce. Plaintiffs respond that much of the commerce alleged took place in Florida and thus FDUTPA applies.

FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Based on this definition, Plaintiffs have clearly alleged that Defendants conducted trade or commerce in the state of Florida. However, FDUTPA applies only to action that occurred within the state of Florida. *Millennium Communications & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (stating that purpose of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the territorial boundaries of the state of Florida). Consequently, Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida. Plaintiffs' Amended Complaint has alleged numerous actions that occurred in Florida and thus, Plaintiffs' FDUTPA claim, Count VI, will not be dismissed but Plaintiffs may only proceed on this claim based on actions that occurred within the state of Florida.

5.  **Count VII Should Not Be Dismissed While Count IX of the Amended Complaint Should Be Dismissed Based on the Economic Loss Rule**

Converteam asserts that Plaintiffs' negligence claims, Count VII for negligent testing, inspecting, repairing, and servicing and Count IX for negligent professional services, should be dismissed based on the economic loss rule, which bars a negligence action brought solely to

11

recover economic damages where a product's failure to perform causes injury only to the product itself. In response, Plaintiffs argue that their negligence claims are not barred by the economic loss rule because the rule does not bar claims for negligent professional services or negligent testing, inspecting, repairing, or servicing.

The economic loss rule prohibits recovery in tort where a product has damaged only itself and the damages are purely economic in nature. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986) (stating that damage to a product itself is most naturally understood as a warranty claim); *Moransais v. Heathman*, 744 So. 2d 973, 983 (Fla. 1999). However, in defining the scope of the economic loss rule the *Moransais* Court stated that "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *Id.* at 981 (quoting *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)). Thus, the Florida Supreme Court held that, in many circumstances, the economic loss rule does not bar claims for professional services. *Id.* at 983.

Plaintiffs' claim for negligent testing, inspecting, repairing and servicing, Count VII, is not barred by the economic loss rule because it alleges negligent acts separate and apart from any warranty claim. Count VII is based on acts that occurred after the purchase and installation of the Mermaid system. Count VII is based on the servicing and repair of the Mermaid system, not the purchase and installation of the system, which would form the basis of any warranty claims. Thus, the Motion to Dismiss should be denied as to Count VII.

Count IX of the Amended Complaint alleges that Defendants did not exercise reasonable care in designing, constructing, servicing, maintaining, testing and repairing problems with the Mermaid system. The portions of Count IX based on servicing, maintaining, testing and

repairing problems are the same as the negligence claim in Count VII and thus should be dismissed as duplicative. The remaining bases for the claim, designing and constructing the Mermaids, are barred by the economic loss rule because these actions are not separate and independent from any breach of warranty claim Plaintiffs have. Plaintiff argues that the Motion to Dismiss should also be denied as to Count IX because the economic loss rule does not bar such claims when a "special relationship" exists between the parties. Plaintiffs have failed to establish the existence of a "special relationship." Further and most importantly, Plaintiffs have not pled facts that are independent from those upon which Plaintiffs base their warranty claims. As the Supreme Court stated in *East River*, "[d]amage to a product itself is most naturally understood as a warranty claim." *East River*, 476 U.S. at 872. Consequently, the economic loss rule bars Plaintiffs' remaining claim for negligent professional services. Thus, Count IX should be dismissed in its entirety.

6.     **Plaintiffs' False Advertising Claim Should Not Be Dismissed**

Converteam moves to dismiss Plaintiffs' false advertising claim, Count X. Converteam argues that Florida Statute § 817.41 does not apply because the allegedly fraudulent misrepresentations were not made to the general public. Plaintiffs respond that Defendants did make representations to the public, specifically the cruise ship industry, and thus the motion to dismiss should be denied as to Count X. Section 817.41(1), which prohibits misleading advertising, prohibits dissemination of misleading advertising to the "general public of the state, or any portion thereof." Converteam argues that a representation by a salesman to a purchaser does not fall within the ambit of Florida's false advertising statute. However, the allegations of the Amended Complaint allege that Defendants made misrepresentations to the "public, particularly the South Florida based cruise ship industry . . . including through the mail and at

industry wide conferences." *See* Amended Complaint, ¶ 140. Thus, for purposes of a motion to dismiss, where the pleadings must be viewed in the light most favorable to the non-moving party, Plaintiffs have met their pleading burden and Count X should not be dismissed.

### 7.  This Action Should Not Be Dismissed Based on Forum Non Conveniens

Lastly, Converteam moves to dismiss the entire Amended Complaint on forum non conveniens grounds. Converteam argues that most of the parties are located in Europe; all of the issues relating to the Mermaid system, design, manufacture, assembly, testing, service and repair, occurred in Europe; and that most of the witnesses are located in Europe. Plaintiffs respond that Converteam has not met its burden of establishing that there is an adequate alternative forum and that the public and private interest factors weigh in favor of dismissing this case.

In a forum non conveniens analysis there is a strong presumption in favor of a plaintiff's choice of forum. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). The party seeking dismissal on forum non conveniens grounds may overcome that presumption by demonstrating three things: 1) an adequate alternative forum is available; 2) the public and private factors weigh in favor of dismissal; and 3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005) (quotations and citation omitted). In order to demonstrate the availability of an adequate alternative forum the moving party must show that the foreign court can exercise jurisdiction over the litigation and that the alternative forum is adequate. *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Courts are strict in requiring the movant demonstrate that the alternative forum offers at least some relief. *Id.*

14

In this case, Converteam has failed to meet its burden of proving that the alternative forum is adequate. Converteam has failed to show that all of the parties would be subject to jurisdiction in either of the alternative forums offered, France or the United Kingdom. Converteam has also failed to show that either of the alternative forums offer at least some relief. Converteam has simply alleged, with no support, that "upon information and belief [both France and the United Kingdom] recognize the causes of action in this litigation." This is not enough to meet the burden of proving the availability and adequacy of the alternative forum. Thus, because Converteam has not met the first element to support its forum non conveniens argument, the Court need not consider the other elements. Consequently, Converteam's Motion to Dismiss on forum non conveniens grounds should be denied.

Accordingly, it is hereby

ORDERED that Converteam's Motion to Dismiss Plaintiffs' Amended Complaint [DE-41] is DENIED in part and GRANTED in part:

1) The Motion to Dismiss is GRANTED as to Count VIII. Count VIII is dismissed without prejudice. Plaintiffs may file an Amended Complaint, as to Count VIII, by **December 4, 2009.**

2) The Motion to Dismiss is GRANTED in part as to Count VI. Count VI is dismissed to the extent that it relies on any conduct that occurred outside of Florida and DENIED in all other respects.

3) The Motion to Dismiss is GRANTED as to Count IX.

4) The Motion to Dismiss is DENIED in all other respects.

DONE AND ORDERED in Miami, Florida this 17 day of November, 2009

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record

15