UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-23318-CIV-SEITZ/O'SULLIVAN

CARNIVAL CORPORATION, CARNIVAL
PLC and CUNARD LINE, LTD,

        Plaintiffs,

vs.

ROLLS-ROYCE PLC, ROLLS-ROYCE AB,
ROLLS-ROYCE NORTH AMERICAN HOLDINGS,
INC., ROLLS-ROYCE COMMERCIAL MARINE, INC.,
CONVERTEAM SAS f/k/a ALSTOM POWER
CONVERSION SA, CONVERTEAM, INC. f/k/a
ALSTOM POWER CONVERSION, INC., ROLLS-
ROYCE AB and CONVERTEAM SAS, jointly and
severally, d/b/a THE MERMAID CONSORTIUM,

        Defendants.
_____/

## ORDER

THIS MATTER is before the Court on Carnival's Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC and Supporting Memorandum of Law (DE# 173, 4/16/10).[1] Having reviewed the applicable filings and the law and having heard from the parties at the April 14, 2010 informal discovery conference, it is

ORDERED AND ADJUDGED that Carnival's Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC and Supporting Memorandum of Law (DE# 173, 4/16/10) is **DENIED** for the reasons stated herein.

---

[1] On April 14, 2010, the Court issued an Order (DE# 172) granting the parties leave to brief this issue.

Carnival seeks to depose Sir John Rose, the Chief Executive Officer of Rolls-Royce Group, PLC, the parent company of the Rolls-Royce entities. See Declaration of Sir John Rose (DE# 178 at 5, 4/20/10). As the party seeking to compel the deposition of a high-ranking executive, Carnival has the burden of showing that Mr. Rose's deposition is necessary. See Little League Baseball, Inc. v. Kaplan, No. 08-60554-CIV, 2009 WL 426277, * 2 (S.D. Fla. Feb. 20, 2009) (noting that the "[d]efendant ha[d] failed to satisfy his burden of showing that it [wa]s necessary to compel the deposition of [plaintiff's] chairman."). "A protective order precluding the deposition of a high-ranking executive officer will be granted where the officer possesses no unique knowledge regarding the underlying facts of the action and files a declaration stating his or her lack of knowledge." McMahon v. Presidential Airways, Inc., No. 6:05-cv-1002-Orl-28JGG, 2006 WL 5359797, at * 2 (M.D. Fla. Jan. 18, 2006). Here, Mr. Rose submitted a sworn declaration stating that he "ha[s] no direct or personal knowledge of any of the facts relating to the subject matter of the Carnival Case," that he "was not involved in any of the commercial or legal aspects relating to claims advanced against the Rolls-Royce defendants" and that he "had no contacts or communications with Carnival [or any other entity] . . . regarding the use of the Mermaid propulsion system on the Queen Mary 2." See Declaration of Sir John Rose (DE# 178 at 5, 4/20/10).

As evidence of Mr. Rose's involvement in the case, Carnival cites to a letter signed by Mr. Rose dated October 28, 2003 See Carnival's Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC and Supporting Memorandum of Law (DE# 173, 4/16/10). However, Mr. Rose has explained that "[t]he letter was largely prepared by others and was sent . . . primarily 'to

acknowledge receipt of' [Carnival's CEO's] October 24, 2003, letter . . . addressed to . . . the chairman of the Board of Rolls-Royce." See Declaration of Sir John Rose (DE# 178 at 5, 4/20/10). Carnival responds that "[a]s an executive of a multinational corporation, Sir John Rose is presumed to be familiar with, and knowledgeable of, the matters contained in correspondence which he personally signs and sends to customers of the company" and that "[a]t a minimum, Carnival is entitled to discover who the 'others' [who wrote the October 28, 2003 letter] are and what knowledge they possess." See Carnival's Reply in Support of Its Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC, and Supporting Memorandum of Law (DE# 180 at 3, 4/21/10). Carnival further argues that it should be allowed to depose Mr. Rose because Mr. Rose "was presumably involved with dealing with former Rolls-Royce executives . . . regarding problems with the Mermaid pods and bearings installed on the QM2." Id. (emphasis added; footnote omitted).

     Carnival has not persuaded the Court that Mr. Rose possesses unique knowledge of the factual issues in this case and as such, his deposition should not be compelled. The October 28, 2003 letter merely acknowledged receipt of correspondence from Micky Arison, Carnival's CEO, addressed to another individual, Evan Baird, who at the time was traveling. See Letter of October 28, 2003 (DE# 173-1, 4/16/10). In the October 28, 2003 letter, Mr. Rose does not attempt to respond to the issues raised by Mr. Arison's letter. Instead, the October 28, 2003 letter states that another individual would be responding to Mr. Arison's concerns. Id. The October 28, 2003 letter further referenced a future meeting to take place on November 3, 2003 between the shipyard and teams from Carnival and Rolls-Royce. Id. The letter does not

indicate that Mr. Rose would be attending this meeting and in fact, Mr. Rose did not attend the meeting. See Declaration of Sir John Rose (DE# 178 at 5, 4/20/10) (stating that he "did not attend any meetings with any of the Carnival entities regarding the Mermaid propulsion systems."). In sum, the October 28, 2003 letter does not establish that Mr. Rose has direct or unique knowledge regarding the instant case.

    In addition to the October 28, 2003 letter, Carnival cites to a fax in which the naval architect for the Queen Mary 2 requests that someone speak to Mr. Rose regarding sharing all the data collected from the sea trial (Exhibit B), "numerous emails" which Carnival does not attach, letters between Mr. Arison and Mr. Robbins (Exhibits C and D), Rolls-Royce's Global Code of Business Ethics executed by Mr. Rose (Exhibit E) and the deposition of Duncan Forbes, a Rolls-Royce executive, taken in another case wherein Mr. Forbes testified that he was "quite sure that Sir John [Rose] would have been aware of [the problems of the Mermaid pod]. He's very conscious of any issues that may have had a high profile that could be impacting on a customer and so through the various reports that we do internally he would've been aware, yes." See Exhibit F (DE#173-1 at 19, 4/16/10). The documents cited by Carnival do not establish that Mr. Rose had any unique knowledge of the issues in this case. Although Mr. Fobes deposition testimony, at first glance, would appear to support the argument that Mr. Rose had unique knowledge, it does not state this for a fact. Mr. Forbes merely assumes that Mr. Rose was aware of the Mermaid pod problems because Mr. Rose is aware of "any" high profile issues affecting customers and Mr. Rose would have learned of the problems through reading internal reports. Id. There is nothing in these documents to suggest that "[Mr.] Rose has direct knowledge regarding Rolls-Royce's

4

concealment of material facts from Carnival" regarding the Mermaid pods. See Carnival's Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC and Supporting Memorandum of Law (DE# 173 at 3-4, 4/16/10). The documents cited by Carnival, including Mr. Forbes' deposition testimony, are not sufficient to overcome the detailed and specific affidavit submitted by Mr. Rose regarding his lack of involvement in the facts giving rise to the instant case.

"An officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactory through less intrusive means." McMahon, 2006 WL 5359797 at *2. Carnival's allegations of Mr. Rose's knowledge regarding the underlying facts in the instant case are at best speculative. Accordingly, Carnival's Motion to Compel the Deposition of Sir John Rose, Chief Executive Officer and Director of Rolls-Royce, PLC (DE# 173, 4/16/10) is **DENIED**.

DONE AND ORDERED, in Chambers, at Miami, Florida, this **22nd** day of April, 2010.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge Seitz
All counsel of record